IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

WILLIAM TONY MCCROAN,

    Plaintiff,

v.                                                       CASE NO. 4:13-cv-370-MW-GRJ

MARGUERITE J. MORGAN and
ADAM SMITH,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant Morgan's Motion to Dismiss. (Doc. 26.) Defendant Morgan asks the Court to dismiss Plaintiff's complaint (Doc. 1) for failure to state a claim. Plaintiff has filed a response in opposition. (Doc. 28.) For the reasons discussed below, Defendant Morgan's Motion to Dismiss is due to be granted.

### I. ALLEGATIONS OF PLAINTIFF'S COMPLAINT

Plaintiff, who was committed to Florida State Hospital (FSH) in 2010 after being adjudicated incompetent to proceed and not guilty by reason of insanity in a state court criminal proceeding, initiated this suit, *pro se* and alleges his constitutional rights were violated when Defendant Smith (a staff member at FSH) sexually assaulted him and Defendant Morgan (an administrator at FSH) refused to send Plaintiff to the emergency room for an evaluation or notify the police.

Plaintiff alleges that on January 5, 2013, Defendant Smith showed him pornography on a cell phone and after 1-2 minutes exposed his penis to Plaintiff. Plaintiff alleges that he attempted to leave and Defendant Smith grabbed Plaintiff's

penis. Defendant Smith then told Plaintiff if he did not tell anyone about the incident, he would bring Plaintiff tobacco products. The incident occurred at 3:15 a.m. on January 5, 2013. One of Plaintiff's family members contacted Defendant Morgan sometime between 8:00 and 8:30 a.m. and informed her of the assault. Plaintiff alleges that Defendant Morgan failed to contact the nurse in Plaintiff's ward to notify her of the sexual assault and Plaintiff's need to be transported to the emergency room for evaluation. Defendant Morgan also failed to contact the police.

Plaintiff "called abuse and made a report" about the incident on January 6, 2013 at 2:00 a.m. A nurse, Nurse Martin, wrote a report about the incident at 5:45 p.m. Plaintiff told Nurse Martin that he was in pain in the area where Defendant Smith grabbed Plaintiff's penis. Nurse Martin sent Plaintiff to the emergency room, where an examination revealed that Plaintiff's penis was bruised. Plaintiff was given Motrin for pain. Plaintiff claims that Defendant Morgan and his treatment team have refused to give him the medical records from his emergency room visit. On January 7, 2013, Plaintiff reported to his psychiatrist that he was depressed because of the incident; his psychiatrist increased his medication dosage. Plaintiff also experienced problems sleeping and eating after the incident.

Plaintiff states that Defendant Smith was eventually arrested and prosecuted for the incident. Plaintiff alleges that Defendant Morgan failed to immediately notify the police or obtain medical care for Plaintiff after the incident. Plaintiff alleges there was a delay of nearly two days between the incident and his treatment for the assault. Plaintiff alleges that Defendant Smith showed him pornography and assaulted him. Plaintiff seeks $1,000,000 in damages. (Doc. 1.) Plaintiff asserts what appear to be

state law claims of negligence, and the Court also construes his complaint as one brought under 42 U.S.C. § 1983 for violations of Plaintiff's Eighth Amendment constitutional rights.

## II. DEFENDANT'S MOTION TO DISMISS

Defendant Morgan alleges that she is immune from suit in her official capacity; Plaintiff has failed to state a claim against her in her individual capacity; and she is entitled to qualified immunity. (Doc. 26.)

## III. STANDARD OF REVIEW

In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate." *Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv.*, 400 F.2d 465, 471 (5th Cir. 1968). For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *See, e.g., Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir.1994). Furthermore, the Court must limit its consideration to the complaint and written instruments attached as exhibits. Fed R. Civ. P. 10(c); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir.1993).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 680-84 (2009), the Supreme Court articulated a two-pronged approach for evaluating a motion to dismiss under Rule 12(b)(6): The court must first determine what factual allegations in the complaint are entitled to a presumption of veracity, and then assess whether these facts give rise to an entitlement for relief. In determining whether factual allegations are entitled to the presumption of

truth, the Court stated that it was not whether the facts are "unrealistic or nonsensical" or even "extravagantly fanciful," but rather it is their conclusory nature that "disentitles them to the presumption of truth." *Iqbal*, 129 S.Ct. at 1951. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007). "While the pleadings of *pro se* litigants are 'liberally construed,' they must still comply with procedural rules governing the proper form of pleadings." *Hopkins v. Saint Lucie County School Bd.,* 2010 WL 3995824, **1 (11th Cir. 2010) (unpublished) (citations omitted) (applying pleading standards of *Iqbal* and *Twombly* to *pro se* complaint).[1]

### IV. DISCUSSION

### A. Official Capacity Claims

The law is well settled that a suit against a state employee in his or her official capacity is deemed to be a suit against the state for Eleventh Amendment purposes. *Will v Michigan Dep't. Of State Police*, 491 U.S. 58, 71 (1989). Therefore, under the Eleventh Amendment when state officials are sued for damages in their official capacity, the state officials are immune from suit in federal court. *Jackson v. Georgia Dep't. of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994). Plaintiff does not specify in his complaint whether he is suing Defendant Morgan in her individual or official capacity. However, to the extent Plaintiff seeks to bring claims for damages against Defendant Morgan in her official capacity, such claims are due to be dismissed.

---

[1]Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

**B.  Eighth Amendment Claims against Defendant Morgan**

In his complaint, Doc. 1, Plaintiff alleges that Defendant Morgan failed to "get [him] immediately examined by a doctor, and not notifying police immediately about the sexual assault."  (Doc. 1, p. 8.)  In his response to the motion to dismiss (Doc. 28), Plaintiff provides additional allegations that clarify the allegations in his complaint.  Although the materials considered on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) are generally limited to the complaint and attached exhibits, the Court can consider Plaintiff's response to the extent they clarify the allegations in his complaint.  See Pegram v. Herdrich, 530 U.S. 211, 230, n. 10 (2000) (using plaintiff's response brief to clarify allegations in her complaint) (citing Wright & Miller, Fed. Practice and Proc. § 1364; Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 428, n. 8 (3d Cir. 1999); Alicke v. MCI Communications Corp., 111 F.3d 909, 911 (D.C. Cir. 1997); Early v. Bankers LIfe & Cas. Co., 959 F. 2d 75, 79 (7th Cir. 1992)).

In Plaintiff's response to the motion to dismiss–which for reasons discussed below also appears to be an attempt to amend his complaint–he clarifies that while Defendant Morgan did not immediately have Plaintiff examined by a doctor or notify the police, she did contact "Chief Smith of security" at Florida State Hospital.  Chief Smith contacted Plaintiff's father, and by 12:30 p.m. the day of the incident (within four hours of when Plaintiff alleged that his family member called Defendant Morgan at home to report the incident), Chief Smith was interviewing Plaintiff.  (Doc. 28, pp. 2-3.)  Plaintiff told Chief Smith "about [Defendant] Adam Smith sexually assaulting [him] and informed him that [Defendant Smith] was going to bring me some tobacco products when he

comes back to work on January 5th 2013 at 11: p.m." (Doc. 28, p. 3.) Chief Smith told Plaintiff to call him by midnight that night if Defendant Smith did not bring the tobacco products. Plaintiff alleges that Defendant Smith gave him the tobacco at 11:30 p.m. and gave him the tobacco, telling him not to tell anyone what happened. Chief Smith called Plaintiff 30 minutes later and subsequently came to the ward, got the tobacco products, and removed Defendant Smith from the ward. Chief Smith then took Plaintiff to talk to a police officer. At 1:15 a.m. on January 6, 2013, Plaintiff told police officer Chafin about the incident, including the allegation that Defendant Smith grabbed Plaintiff's penis while Plaintiff was fully clothed. (*Id.* at pp. 3-4.) After reporting the details of the incident to Officer Chafin, Chief Smith brought Plaintiff back to the ward and at around 2:00 a.m. he called an abuse hotline and also reported the incident. (*Id.* at p. 6.)

As the Court has previously noted, Plaintiff is not a "prisoner" for the purposes the PLRA. (Doc. 4.) However, he can still pursue his constitutional claims under § 1983, as the Eleventh Circuit has held that "the due process rights of the involuntarily civilly committed are 'at least as extensive' as the Eighth Amendment 'rights of the criminally institutionalized,' and therefore, 'relevant case law in the Eighth Amendment context also serves to set forth the contours of the due process rights of the civilly committed.'" *Lavender v. Kearney,* 206 Fed. Appx. 860, 863 (11th Cir. 2006) (unpublished) (internal quotations omitted).

Plaintiff alleges that Defendant Morgan failed to immediately get him medical attention and failed to immediately contact police after a family member reported the incident to Defendant Morgna. (Docs. 1, 28.) To state a claim of deliberate

indifference against Defendant Morgan, Plaintiff must allege that she: "(1) was objectively aware of a risk of serious harm; (2) recklessly disregarded the risk of harm; and (3) [that] this conduct was more than merely negligent." *Farmer v. Brennan,* 511 U.S. 825, 835 (1994) (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). Here, Plaintiff alleges that one of his family members called Defendant Morgan, a hospital administrator, at her home at some time between 8:00 and 8:30 a.m. on Saturday, January 5, 2013. (Docs. 1, 28.) The family member told Defendant Morgan about the incident, which according to Plaintiff, involved Defendant Smith showing Plaintiff pornography on a cell phone, exposing is own penis, and then grabbing Plaintiff's penis while Plaintiff was fully clothed. Plaintiff alleges that Defendant Morgan then notified Florida State Hospital's Chief of Security, Joseph Smith, who took over the investigation. Chief Smith contacted Plaintiff's father, then interviewed Plaintiff at approximately 12:30 p.m. on January 5, 2013, and later took Plaintiff to the police to report the incident. (Doc. 28.)

Under the facts alleged by Plaintiff, he has failed to state a claim for a constitutional violation against Defendant Morgan. Assuming, *arguendo*, that both the risk of harm from Defendant Smith's alleged sexual misconduct and the injury to Plaintiff's penis from being grabbed while fully clothed were substantially serious, Plaintiff has failed to allege that Defendant Morgan acted with deliberate indifference. Plaintiff asserts that Defendant Morgan contacted the hospital's chief of security, who in turn spoke with Plaintiff's father, interviewed Plaintiff in person, and brought Plaintiff to the police to make a report. This all occurred on January 5, 2013, the same day of the alleged incident with Defendant Smith. (Docs. 1, 28.) Thus, based on Plaintiff's factual

allegations, Defendant Morgan, once she was made aware of the assault, acted promptly to contact the hospital's chief of security, who in turn handled the investigation and took Plaintiff to make a police report.  Defendant Smith was removed from the ward during his next shift and was eventually arrested.  (Docs. 1, 28.)  Nothing in this scenario arises to the level of deliberate indifference.

To the extent Plaintiff attempts to hold Defendant Morgan liable under § 1983 based on a theory of supervisory liability–i.e., for any alleged wrongdoing he claims by Chief Smith during his handling of the investigation–this theory would also fail.  Supervisory liability can only be established "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation."  *Matthews v. Crosby,* 480 F.3d 1265, 1270 (11th Cir. 2007).  In order to allege a causal connection and state a claim against a supervisor, "the plaintiff must allege purposeful action by the supervisor to deprive plaintiff of a constitutional right." *Hood v. Dep't of Children and Families*, 2014 WL 757914, at *5 (M.D. Fla. 2014) (citing *Iqbal*, 556 U.S. at 677.  Plaintiff does not allege that Defendant Morgan personally participated in an active plan to deny him treatment or delay contacting law enforcement.

Accordingly, Defendant Morgan's motion to dismiss Plaintiff's claims against her for failure to state a claim is due be granted.  Plaintiff's allegations, if taken as true, do not state a claim for a constitutional violation by Defendant Morgan.

**C.  Qualified Immunity**

Defendant Morgan argues that even if Plaintiff did state a constitutional claim

against her, she is entitled to qualified immunity.  (Doc. 26.)  The two-part test for determining whether a defendant is entitled to qualified immunity requires the Court to consider (1) whether the plaintiff alleged a constitutional violation; and (2) whether the violation alleged is clearly established in the law.  *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001).  For the reasons discussed above, Plaintiff has failed to state a claim for a constitutional violation against Defendant Morgan.  Therefore, the Court need not reach Defendant Morgan's claim of qualified immunity.

### D.  New claims raised in Plaintiff's response

In Plaintiff's response to the motion dismiss, which is titled "Motion to Attack and Object Defendant Marguerite J. Morgan's Motion to Dismiss Plaintiff's Complaint" (Doc. 28) but is styled similar to a complaint, he alleges that in addition to Defendant Morgan, Chief of Security Joseph Smith and police officer Chafin also failed to get him immediate medical attention.  In light of Plaintiff's *pro se* status, the court must liberally construe Plaintiff's response as a motion to amend his complaint.  *See, e.g., Newsome v. Chatham County Detention Ctr.,* 256 Fed. Appx. 342, 344 (11th Cir. 2007) (remanding to district court for consideration of new allegations raised in *pro se* plaintiff's objections to the magistrate judge's recommendation).  Plaintiff is proceeding on his original complaint, and based on the allegations in the response to his motion to dismiss, leave to amend is due to be granted.

However, Plaintiff is warned that as presented in his complaint and response to the motion to dismiss, his facts do not state a claim for deliberate indifference to his medical needs.  First, it is questionable that Plaintiff's injury as a result of Defendant Smith grabbing his penis through clothing would be sufficiently serious as to trigger

Eighth Amendment protections. "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1187 (11th Cir. 1994)); *Fernandez v. Metro Dade Police Dept.*, 397 Fed. Appx. 507 (11th Cir. 2010) (finding as a matter of law that plaintiff's facial bruise was not an objectively serious medical need).

Second, Plaintiff makes no allegation that he told Chief Smith or Officer Chafin that he needed medical attention and that they refused, only that "he had to go to the nurse [himself]" to get medical attention. Plaintiff received medical treatment at a hospital emergency room within 38 hours of the incident, where a bruise was noted and Motrin was prescribed. (Docs. 1, 28.) As explained above, to establish a claim of deliberate indifference, Plaintiff must allege that defendants were objectively aware of his serious medical need and recklessly disregarded the risk of that harm. However, in an abundance of caution, Plaintiff should be permitted an opportunity to amend his complaint.

## V. RECOMMENDATION

For the foregoing reasons it is respectfully **RECOMMENDED** that:

1. Defendant Morgan's Motion to Dismiss (Doc. 26) should be **GRANTED.** Plaintiff's claims against Defendant Morgan are due to be dismissed in their entirety. The case will proceed against Defendant Smith, who was served but has failed to file any response to the complaint. Plaintiff has not filed a motion for default judgment against Defendant Smith.

2. Plaintiff should be granted leave to amend his complaint to incorporate the new claims against Chief Smith and Officer Chafin raised in his

response to the motion to dismiss.

**IN CHAMBERS**  this 21st day of March 2014.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

*Case No: 4:13-cv-370-MW-GRJ*